JPL:RMT
F.#2011R00254

 MISC. 11 -115

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x
                                   :
IN THE MATTER OF AN APPLICATION OF :
THE UNITED STATES OF AMERICA FOR AN:
ORDER AUTHORIZING (1) THE USE OF A : <u>SEALED APPLICATION</u>
PEN REGISTER AND A TRAP AND TRACE  :
DEVICE WITH PROSPECTIVE CELL-SITE  :
INFORMATION AND (2) THE RELEASE OF :
HISTORICAL CELL-SITE AND SUBSCRIBER:
INFORMATION FOR A MOBILE TELEPHONE :
ASSIGNED NUMBER (347) 535-6911     :
                                   :
- - - - - - - - - - - - - - - - - x

EASTERN DISTRICT OF NEW YORK, SS:

      Richard M. Tucker, an Assistant United States Attorney

for the Eastern District of New York, hereby applies to the Court

for Orders authorizing a pen register and trap and trace device

with prospective cell-site information and the release of

historical cell-site and subscriber information for (347) 535-

6911, a mobile telephone issued by Sprint Nextel (a "service

provider"), subscribed to by GAGA GAGA (the "SUBJECT TELEPHONE").

In support of this application I state the following:

I.  <u>Facts Supporting Application</u>

      1.  I have discussed this matter fully with a law

enforcement officer involved in the investigation.  Based upon

that discussion, I believe and for the following reasons hereby

certify that the information likely to be obtained by the use of

a pen register and trap and trace device is relevant to an

ongoing criminal investigation as required by 18 U.S.C.

§ 3123(a).  First, the Federal Bureau of Investigation (the "Investigative Agency") is conducting a criminal investigation into possible violations of federal criminal laws, including narcotics offenses in violation of 21 U.S.C. §§ 841, 843 and 846 (the "specified offenses").  Second, it is believed that HARVEY CHRISTIAN, also known as "Black," and others known and unknown, have used and will continue to use the SUBJECT TELEPHONE in furtherance of the specified offenses.  Third, pen register and trap and trace device information will further the investigation by helping to identify co-conspirators.

2.    Based upon discussions with a special agent of the Investigative Agency, the government sets forth the following facts showing that probable cause exists to believe that information identifying the antenna tower receiving transmissions from the SUBJECT TELEPHONE at the beginning and the end of a call or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower is receiving the transmission ("PROSPECTIVE CELL-SITE INFORMATION"), will constitute or lead to evidence of the specified offenses, as well as help to identify individuals who are engaged in the commission of these offenses:[1]

_____

[1] In presenting probable cause to support its prospective cell-site information request, the government does not concede that such cell-site records — routinely retained by wireless carriers as business records — may only be obtained via a warrant under Fed. R. Crim. P. 41.  See In re Application, 632

a.    This investigation has established information indicating that HARVEY CHRISTIAN, also known as "Black," is using the SUBJECT TELEPHONE.  Specifically, a special agent with the Investigative Agency has informed me that a confidential informant working with the Investigative Agency and the New York City Police Department (the "NYPD") have contacted CHRISTIAN on at least two separate occasions on the SUBJECT TELEPHONE for the purpose of purchasing crack cocaine.[2]  On both of those occasions -- January 2011 and February 2011 -- the confidential informant, in coordination with the NYPD, was successful in purchasing a substance that has field-tested positive for the presence of cocaine and, based on its texture and appearance, appears to be crack cocaine, from CHRISTIAN.

b.    Through the use of confidential informants, the Investigative Agency has determined that HARVEY CHRISTIAN, also known as "Black," also communicates on at least two other telephone numbers to coordinate the sale of illegal drugs.  Among several conversations regarding drugs, a confidential informant

---

F. Supp. 2d 202 (E.D.N.Y. 2008) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.); In re Application, Misc. No. 08-533 (BMC) (E.D.N.Y. Jan. 12, 2009) (same); In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (same).

[2] This confidential information has previously provided reliable information for past investigations that has resulted in the issuance of multiple search warrants wherein narcotics and firearms were recovered.

3

spoke to CHRISTIAN on one of these phones in November 2010 to arrange the purchase of crack cocaine.  On December 30, 2010, the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge for the Eastern District of New York, authorized the installation and use of a pen register and a trap and trace device with prospective cell-site information and the release of historical cell-site information for those two other telephone numbers (Misc. 10-905).  These pen register and trap and trace devices have provided and are continuing to provide information and investigative leads in the overall investigation into CHRISTIAN.

        c.   I have been informed by a special agent of the Investigative Agency that based on that agent's training and experience, subscriber information with respect to telephone numbers identified by a pen register or trap and trace device has yielded information that was relevant and material in previous narcotics investigations.  Such information includes leads relating to: (1) the names of suspected suppliers, customers and other individuals who assist in the distribution of narcotics; (2) the addresses of "stash" houses where narcotics are stored; (3) the identity of transportation sources used by drug traffickers; (4) the locations of money transfer businesses used by members of the operation to launder proceeds of drug trafficking activities or through which money is exchanged with co-conspirators; (5) the identity of bank and credit card

4

accounts used by members of the organization to obtain good and services used by it; (6) the geographic breadth of the suspected drug trafficking operation and (7) the identity of the potential organizers, leaders, managers, or supervisors of the suspected trafficking operation.  The investigating agent has further advised me that, based upon that agent's training and experience, one way to identify co-conspirators is to obtain subscriber information for calls made to and from the SUBJECT TELEPHONE, and then conduct an investigation concerning those names, addresses and the accounts they use to pay for telephone service.  Using subscriber information, law enforcement agents could then conduct surveillance at the addresses and determine if criminal activity was occurring there, which in turn could result in the identification of additional co-conspirators and possible narcotics storage locations.  Likewise, the investigating agent has advised me that, based upon that agent's training and experience, prospective cell-site information can be used to aid agents in surveilling targets as they move from one location to another and identify the location of co-conspirators and stash houses.  Likewise, historical cell-site information can be used to identify co-conspirators' residences, meeting places and stash houses.

     3.   The government submits that the foregoing also constitutes specific and articulable facts showing that there are

reasonable grounds to believe that the following information is relevant and material to an ongoing criminal investigation of the specified offenses:

a.    subscriber information pertaining to telephone numbers identified through the pen register and trap and trace device, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing, or signaling information captured by the pen register on the SUBJECT TELEPHONE and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONE as captured by the trap and trace device on the SUBJECT TELEPHONE ("SPECIFIED SUBSCRIBER INFORMATION");[3] and

b.    recorded information that identifies the antenna tower that received transmissions from the SUBJECT TELEPHONE at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower received the

---

[3] The SPECIFIED SUBSCRIBER INFORMATION therefore includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

transmission ("HISTORICAL CELL-SITE INFORMATION"), for the period from November 1, 2010 until 11:00 a.m. Eastern Time on the date the Court issues its Orders.

## II.   Relief Requested

4.   Based upon the foregoing, the government requests that the Court issue the enclosed proposed Orders that provide:

a.   pursuant to 18 U.S.C. §§ 3122 and 3123, authorization for the installation and use of a pen register to record or decode dialing, routing, addressing, or signaling information — excluding the decoding of post-cut-through dialed digits ("PCTDD")[4] -- transmitted from the SUBJECT TELEPHONE, to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls for a period of 60 days;

b.   pursuant to 18 U.S.C. §§ 3122 and 3123, authorization for installation and use of a trap and trace device

---

[4] PCTDD "are digits that are dialed from a telephone after a call is connected or 'cut-through.'" In re Application, 632 F. Supp. at 203 n.1.  Pursuant to the proposed Order to Service Provider, if possible, the provider will forward only pre-cut-through-dialed digits to the Investigative Agency.  If the provider's technical capabilities require it to forward all dialed digits including PCTDD, however, the Investigative Agency will only decode and forward to the assigned special agents the numbers that are dialed before the call is cut through.  Thus no PCTDD will be decoded or accessed by anyone.  See id. at 204 n.3 ("It is irrelevant that the provider will forward PCTDD to the Government and that the Government will therefore be able, if it violates the court order, to record and decode it.").

on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the sources of wire or electronic communications and to record the date, time and duration of calls created by such incoming impulses, for a period of 60 days, and that the tracing operations be without geographical limits;

        c.    pursuant to 18 U.S.C. § 3123(b)(1)(C), authorization for the requested installation and use of a pen register and a trap and trace device to include authorization for any changed telephone number assigned to an instrument bearing the same ESN or IMSI as the SUBJECT TELEPHONE, or any changed ESN or IMSI subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN or IMSI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and account number as the SUBJECT TELEPHONE;

        d.    pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service provider, and to any other local, long distance, or wireless carrier servicing the SUBJECT TELEPHONE or a telephone that communicates with the SUBJECT TELEPHONE to supply the SPECIFIED SUBSCRIBER INFORMATION, upon oral or written

request by special agents of the Investigative Agency, for a period of 60 days;

e.   pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service provider to within seven days supply HISTORICAL CELL-SITE INFORMATION for the period from November 1, 2010 until 11:00 a.m. Eastern Time on the date of the proposed Orders; and

f.   pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, a directive to the service provider to supply PROSPECTIVE CELL-SITE INFORMATION for a period of 60 days.

5.   The government further requests that the Court direct the service provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to notify special agents of the Investigative Agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONE, including telephone numbers and subscriber information (published and non-published, and excepting call detail records as described in 18 U.S.C. § 2703(c)(2)(C)), associated with these service changes.

6.   The government further requests pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), the Court direct that the service

provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Orders furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace device with compensation to be paid by the Investigative Agency for reasonable expenses directly incurred in providing such facilities and assistance.

7.   The government further requests that the Orders direct the service provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to furnish the results of the pen register and trap and trace device installations to special agents of the Investigative Agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

8.   The government further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the SUBJECT TELEPHONE outside of daytime hours.

9.   The government further requests pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), that the service provider, and any other person or entity whose assistance is used to facilitate execution of the Orders be ordered not to disclose to the listed

subscriber of the telephone, or to any other person (a) the existence of the Order of Authorization; (b) the existence of the Order to Service provider; (c) the existence of the pen register and trap and trace device; (d) the production of the HISTORICAL and PROSPECTIVE CELL-SITE INFORMATION and (e) the production of the SPECIFIED SUBSCRIBER INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person, unless and until otherwise ordered by the Court.  There is "reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result."  18 U.S.C. § 3103a(b)(1).  Providing prior notice to the subscriber or user of the SUBJECT TELEPHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from potential prosecution.

10.  Finally, the government requests that pursuant to 18 U.S.C. § 3103a(b) and Fed. R. Crim. P. 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extensions thereof.

11.   No prior request for the relief set forth herein has been made except to the extent set forth above.   The foregoing is affirmed under the penalties of perjury.   <u>See</u> 28 U.S.C. § 1746.

Dated:      Brooklyn, New York
            February 17, 2011

_____
Richard M. Tucker
Assistant United States Attorney
(718) 254-6204

12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



- - - - - - - - - - - - - - - - - - - x

IN THE MATTER OF AN APPLICATION OF      :
THE UNITED STATES OF AMERICA FOR AN     :
ORDER AUTHORIZING (1) THE USE OF A      :    SEALED ORDER
PEN REGISTER AND A TRAP AND TRACE       :    OF AUTHORIZATION
DEVICE WITH PROSPECTIVE CELL-SITE       :
INFORMATION AND (2) THE RELEASE OF      :
HISTORICAL CELL-SITE AND SUBSCRIBER     :
INFORMATION FOR A MOBILE TELEPHONE      :
ASSIGNED NUMBER (347) 535-6911          :

- - - - - - - - - - - - - - - - - - - x

Upon the application of the United States of America,

THE COURT HEREBY FINDS:

1.   Pursuant to 18 U.S.C. § 3123, the applicant has

certified that the information likely to be obtained by use of a

pen register and a trap and trace device on (347) 535-6911, a

mobile telephone issued by Sprint Nextel (a "service provider"),

subscribed to by GAGA GAGA (the "SUBJECT TELEPHONE"), is relevant

to an ongoing criminal investigation being conducted by the

Federal Bureau of Investigation (the "Investigative Agency") into

possible violations of 21 U.S.C. §§ 841, 843 and 846 by HARVEY

CHRISTIAN, also known as "Black," and others the "specified

offenses").

2.   Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the

applicant has offered specific and articulable facts showing that

there are reasonable grounds to believe that the subscriber and

historical cell-site information specified below are relevant and material to an ongoing criminal investigation of the specified offenses.

3.    Pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, the applicant has demonstrated that probable cause exists to believe that the prospective cell-site information specified below will constitute or lead to evidence of the specified offenses, as well as the identification of individuals who are engaged in the commission of these offenses.

NOW, THEREFORE, IT IS HEREBY ORDERED:

4.    Pursuant to 18 U.S.C. § 3123, special agents of the Investigative Agency may install, or cause to be installed, and use a pen register to record or decode dialing, routing, addressing, or signaling information transmitted from the SUBJECT TELEPHONE — excluding the decoding of post-cut-through dialed digits ("PCTDD")[1] — to record the date and time of such dialings or transmissions, and to record the length of time the telephone

---

[1] PCTDD "are digits that are dialed from a telephone after a call is connected or 'cut-through.'" In re Application, 632 F. Supp. 2d 202, 203 n.1 (E.D.N.Y. 2008).  Pursuant to the proposed Order to Service Provider, if possible, the provider will forward only pre-cut-through-dialed digits to the Investigative Agency.  If the provider's technical capabilities require it to forward all dialed digits, including PCTDD, however, the Investigative Agency shall only decode and forward to the assigned special agents the numbers that are dialed before the call is cut through.

receiver in question is "off the hook" for incoming or outgoing calls for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

5. Pursuant to 18 U.S.C. § 3123, special agents of the Investigative Agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

6. Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider and any other local, long distance or wireless carrier servicing the SUBJECT TELEPHONE shall supply subscriber information pertaining to telephone numbers identified through the pen register and trap and trace device, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing, or

3

signaling information captured by the pen register on the SUBJECT TELEPHONE and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONE as captured by the trap and trace device on the SUBJECT TELEPHONE ("SPECIFIED SUBSCRIBER INFORMATION"),[2] upon oral or written request by special agents of the Investigative Agency.

7.     Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within seven days the service provider shall supply recorded information that identifies the antenna tower that received transmissions from the SUBJECT TELEPHONE at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower received the transmission ("HISTORICAL CELL-SITE INFORMATION"), for the period from November 1, 2010 until 11:00 a.m. Eastern Time on the date of this Order.

8.     Pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider shall

---

[2] The SPECIFIED SUBSCRIBER INFORMATION includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

supply information identifying the antenna tower receiving transmissions from the SUBJECT TELEPHONE at the beginning and the end of a call or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower is receiving the transmission ("PROSPECTIVE CELL-SITE INFORMATION").

9. This authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN or IMEI numbers as the SUBJECT TELEPHONE, or any changed ESN or IMEI number subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN or IMEI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONE.

10. The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order notify special agents of the Investigative Agency, upon oral or written request, of any and all changes in service regarding the SUBJECT TELEPHONE to include telephone numbers and subscriber information (published and non-published and excepting

call detail records as described in 18 U.S.C. § 2703(c)(2)(C))
associated with these service changes.

      11.   Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2) and
18 U.S.C. § 2703(c) and (d), the service provider and any other
person or entity providing wire or electronic communication
service in the United States whose assistance may facilitate
execution of the Order shall furnish special agents of the
Investigative Agency forthwith all information, including but not
limited to telephone subscriber information, facilities, and
technical assistance necessary to accomplish the installation and
use of the pen register and trap and trace device unobtrusively
and with minimum interference.

      12.   The service provider and any other person or
entity providing wire or electronic communication service in the
United States whose assistance is used to facilitate execution of
the Order furnish the results of the pen register and trap and
trace device installations to special agents of the Investigative
Agency as soon as practicable, and on a continuing basis, 24
hours a day for the duration of the Order.

      13.   The service provider and any other person or
entity whose assistance is used to facilitate this Order be
compensated by the Investigative Agency for reasonable expenses
directly incurred in providing such assistance.

14. The Court's Orders, the warrant and the application shall be sealed until further Order of the Court, except that copies of the warrant and the Court's Orders, in full or redacted form, may be maintained by the United States Attorney's Office, and may be served on law enforcement officers, and other government and contract personnel acting under the supervision of such law enforcement officers, and the service provider as necessary to effectuate the Court's Orders.

15. Pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), service of notice may be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extension thereof.

16. The service provider, its affiliates, officers, employees, and agents not disclose the Court's Orders or the underlying investigation, until notice is given as provided above.

Dated:   Brooklyn, New York
         2/17/11

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - MISC. 11-115

IN THE MATTER OF AN APPLICATION OF      :
THE UNITED STATES OF AMERICA FOR AN     :
ORDER AUTHORIZING (1) THE USE OF A      :      SEALED ORDER TO
PEN REGISTER AND A TRAP AND TRACE       :      SERVICE PROVIDER
DEVICE WITH PROSPECTIVE CELL-SITE       :
INFORMATION AND (2) THE RELEASE OF      :
HISTORICAL CELL-SITE AND SUBSCRIBER     :
INFORMATION FOR A MOBILE TELEPHONE      :
ASSIGNED NUMBER (347) 535-6911          :
                                        :
- - - - - - - - - - - - - - - - - :
                                        x

      WHEREAS this Court has, upon the application of the

United States of America, entered an Order authorizing a pen

register and trap and trace device with prospective cell-site

information and the release of historical and cell-site

information, the Court hereby ORDERS:

      1.    Pursuant to 18 U.S.C. § 3123, special agents of

the Federal Bureau of Investigation (the "Investigative Agency")

may install, or cause to be installed, and use a pen register to

record or decode dialing, routing, addressing, or signaling

information transmitted from (347) 535-6911, a mobile telephone

issued by Sprint Nextel (a "service provider"), subscribed to by

GAGA GAGA (the "SUBJECT TELEPHONE") to record the date and time

of such dialings or transmissions, and to record the length of

time the telephone receiver in question is "off the hook" for

incoming or outgoing calls for a period of 60 days, beginning at

any time within 14 days from the date of this Order.

2.    To the extent possible in light of the service provider's technical capabilities, the service provider shall forward to the Investigative Agency only those digits dialed before a call is cut-through.  However, to the extent that the service provider is unable to exclude post-cut-through dialed digits, the service provider shall forward all dialed digits to the Investigative Agency.

3.    Pursuant to 18 U.S.C. § 3123, special agents of the Investigative Agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and the tracing operations shall be without geographical limits.

4.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider and any local, long distance or wireless provider, or person or entity providing wire or electronic communication service in the United States or any other person or entity servicing either the SUBJECT TELEPHONE or

2

a telephone that communicates with the SUBJECT TELEPHONE, shall supply subscriber information pertaining to telephone numbers identified through the pen register and trap and trace device, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing, or signaling information captured by the pen register on the SUBJECT TELEPHONE and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONE as captured by the trap and trace device on the SUBJECT TELEPHONE ("SPECIFIED SUBSCRIBER INFORMATION"),[1] upon oral or written request by special agents of the Investigative Agency.

    5. Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within seven days the service provider shall supply recorded information identifying the antenna tower that received transmissions from the SUBJECT TELEPHONE at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower received the transmission ("HISTORICAL CELL-SITE INFORMATION"),

---

[1] The SPECIFIED SUBSCRIBER INFORMATION includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

for the period from November 1, 2010 until 11:00 a.m. Eastern Time on the date of this Order.

6.    Pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, for a period of 30 days, beginning at any time within 14 days from the date of this Order, the service provider shall supply information that identifies the antenna tower receiving transmissions from the SUBJECT TELEPHONE at the beginning and the end of a call or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower is receiving the transmission ("PROSPECTIVE CELL-SITE INFORMATION").

7.    Pursuant to 18 U.S.C. § 3123(b)(1)(C), the authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN or IMEI numbers as the SUBJECT TELEPHONE, or any changed ESN or IMEI number subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN or IMEI number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONE.

4

8.    The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall notify special agents of the Investigative Agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONE, including telephone numbers and subscriber information (published and non-published, and excepting call detail records, as described in 18 U.S.C. § 2703(c)(2)(C)), associated with these service changes.

9.    Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), upon service of this Order upon it the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall furnish special agents of the Investigative Agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

10.    The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of

the Order furnish the results of the pen register and trap and trace device installations to special agents of the Investigative Agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

11.   The service provider and any other person or entity that provides technical assistance in executing this Order shall be compensated by the Investigative Agency for reasonable expenses directly incurred in providing such assistance.

12.   This Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the Investigative Agency, the service provider and any other person or entity whose assistance is used to execute this Order.

13.   Unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction: (a) the existence of the Order of Authorization; (b) the existence of the Order to Service provider; (c) the existence of the pen register and trap and trace device; (d) the production of the HISTORICAL or PROSPECTIVE CELL-SITE INFORMATION and (e) the production of the SPECIFIED SUBSCRIBER INFORMATION, to the listed subscriber for the SUBJECT

6

TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated:     Brooklyn, New York

2/17/11

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

7

Prospective Cell-Site Information Warrant (Rev. 4/10)

| | DISTRICT |
|---|---|
| **United States District Court** | Eastern District of New York |
| UNITED STATES OF AMERICA<br>v. | DOCKET NO.                MAGISTRATE'S CASE NO.<br>**MISC.  11 - 115**<br>To:          ANY AUTHORIZED FEDERAL AGENT |
| PREMISES KNOWN AND DESCRIBED AS A<br>MOBILE TELEPHONE ASSIGNED NUMBER<br>(347) 535-6911 | |

Affidavit having been made before me by the below-named affiant to obtain location information concerning the following mobile phone (the "Premises"):

A MOBILE TELEPHONE ASSIGNED NUMBER (347) 535-6911

and as I am satisfied that there is probable cause for the acquisition of location information concerning the Premises,

YOU ARE HEREBY COMMANDED to acquire location data concerning the Premises named above for a period of 60 days, starting within 14 days of the date of this Warrant, during any time of day.

After the monitoring period authorized by the warrant has ended, the officer executing this warrant or an officer present during the execution of the warrant, must return this warrant to the United States Magistrate Judge and, pursuant to 18 U.S.C. § 3103a(b) (authorizing delayed notification), to serve notice within 30days after the monitoring period authorized by the warrant has ended.

| NAME OF AFFIANT | SIGNATURE OF JUDGE OR U.S. MAGISTRATE | DATE/TIME ISSUED |
|---|---|---|
| AUSA *Richard Tucker* | *Cheryl Pall* | 2/17/11 3:00 |

RETURN

DATE AND TIME ACQUISITION OF LOCATION DATA FIRST INITIATED AND PERIOD DURING WHICH IT WAS ACQUIRED:

## CERTIFICATION

I swear that this information contained on this return is true and accurate:

_____

Subscribed, sworn to, and returned before me this date.

_____          _____

*Federal Judge or U.S. Magistrate*                    *Date*